IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

DAVID LEE GRAHAM                              )
                                             )
                 Plaintiff,                   )
vs.                                           )
                                             )
BRAD HENRY,  STATE OF OKLAHOMA,               )        No.  06-CV-381-TCK (FHM)
TIM HARRIS, TULSA POLICE DEPARTMENT,          )
TULSA COUNTY SHERIFF'S OFFICE, AND            )
DREW EDMONDSON,                               )
                                             )
                 Defendants.                  )

## OPINION AND ORDER

Before the Court is Plaintiff's "Motion for Injunction on Sex Offender Registration Requirements & Motion to Move In To [sic] Family Owned Home" ("Motion for Injunction") (Dkt. No. 2), Plaintiff's "Motion for Ruling" (Dkt. No. 33), and Plaintiff's "Motion for Court Order" (Dkt. No. 36).  The Court held a hearing on Plaintiff's Motion for Injunction on Tuesday, August 29, 2006.[1]

## I.    FACTUAL BACKGROUND

On or about December 19, 1995, Plaintiff David Lee Graham[2] pled guilty to Rape by Instrumentation in violation of OKLA. STAT. tit. 21 § 111.1 and First Degree Rape in violation of OKLA. STAT. tit. 21 § 111.4.  Plaintiff received a five-year suspended sentence.  As a result of these

---

[1]  The Court notes at the outset that Plaintiff is representing himself.  Although a pro se litigant's pleadings are to be construed liberally, Plaintiff is still required to allege the necessary underlying facts to support a claim, and it is not the proper function of the Court to assume the role of advocate for Plaintiff.  *See Hammons v. Saffle*, 348 F.3d 1250, 1258 (10th Cir. 2003); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[2]  Plaintiff testified that he has also been known by the name of David Maywald.

charges, Plaintiff has been registered as a sex offender since 1995.[3]  Plaintiff now claims that OKLA. STAT. tit. 57 § 590 ("Section 590"), which prohibits registered sex offenders from residing in certain areas, is unconstitutional.

Section 590 is part of the Sex Offenders Registration Act ("Act"), originally enacted in 1989. *See* OKLA. STAT. tit. 57 § 581 *et seq.*  The Act applies to "any person residing, working or attending school within the State of Oklahoma" who has been convicted of, or received a suspended sentence or other probationary term for, the commission or attempted commission of certain sex crimes. OKLA. STAT. tit. 57 § 582(A).  In 2003, the Oklahoma Legislature amended the Act to include Section 590, which prohibited registered sex offenders from residing within a 2,000 foot radius of a school or educational institution.[4]  In June 2006, the Legislature amended Section 590, broadening the scope of the residency restriction to prohibit registered sex offenders from living within a 2,000 foot radius of not only schools and educational institutions, but also of any playground, park, or child

---

[3]  Plaintiff's testimony indicates that there have been a few instances in the past eleven (11) years in which Plaintiff failed to properly register as a sex offender.

[4]  As enacted in 2003, Section 590 stated:

It is unlawful for any person registered pursuant to the Oklahoma Sex Offenders Registration Act to reside within a two thousand-foot radius of any public or private school site or educational institution.

Nothing in this provision shall require any person to sell or otherwise dispose of any real estate or home acquired or owned prior to the conviction of the person as a sex offender.  Any person willfully violating the provisions of this section by intentionally moving into any neighborhood or to any real estate or home within the prohibited distance shall, upon conviction, be guilty of a misdemeanor punishable by a fine not to exceed Three Thousand Dollars ($3,000.00) on a first offense, and any second or subsequent offense shall be punishable by incarceration for one (1) year in the county jail in addition to such fine.

care facility.  Specifically, the current version of Section 590 states as follows:

> It is unlawful for any person registered pursuant to the Sex Offenders Registration Act to reside, either temporarily or permanently, within a two-thousand-foot radius of any public or private school site, educational institution, playground, park, or licensed child care facility.  On the effective date of this act, the distance indicated in this section shall be measured from the nearest property line of the residence of the person to the nearest property line of the public or private school site, educational institution, playground, park, or licensed child care facility; provided, any nonprofit organization established and housing sex offenders prior to the effective date of this provision shall be allowed to continue its operation.

> Nothing in this provision shall require any person to sell or otherwise dispose of any real estate or home acquired or owned prior to the conviction of the person as a sex offender.  Any person willfully violating the provisions of this section by intentionally moving into any neighborhood or to any real estate or home within the prohibited distance shall, upon conviction, be guilty of a felony punishable by a fine not to exceed Three Thousand Dollars ($3,000), or by imprisonment in the custody of the Department of Corrections for a term of not less than one (1) year nor more than three (3) years, or by both such fine and imprisonment.  Any person convicted of a second or subsequent violation of this section shall be punished by a fine not to exceed Three Thousand Dollars ($3,000), or by imprisonment in the custody of the Department of Corrections for a term of not less than three (3) years, or by both such fine and imprisonment.

As a result of the residency restrictions in Section 590—specifically, the provision prohibiting a registered sex offender from living within a 2,000 foot radius of a school—Plaintiff is prohibited from living with his wife in her residence at 8834 South Braden ("South Braden residence").[5]  Instead, Plaintiff contends he has been forced to reside at a local Economy Inn. Specifically, Plaintiff resided with his wife in the South Braden residence until he received a letter from the Sex Offender Registration Unit of the Tulsa Police Department on November 10, 2005. This letter informed Plaintiff that the South Braden residence was within a 2,000 foot radius of

---

[5] Plaintiff's wife has owned the South Braden residence for sixteen (16) years and is the sole owner of the property.

Holland Hall School,[6] and by living in said residence, he was accordingly in violation of Section 590.[7] [8] Plaintiff then moved to the Economy Inn in December 2005, where he has remained until recently.[9]

According to Plaintiff, the application of Section 590[10]—specifically, the provision prohibiting a sex offender from living within a 2,000 foot radius of a school or educational institution[11]—has injured him in multiple ways. Plaintiff testified that his wife has been diagnosed with breast cancer, necessitating his return to the South Braden residence. Plaintiff also asserts that

---

[6] During the Court's hearing on August 29, 2006, Plaintiff testified that the South Braden residence is not within a 2,000 foot radius of a playground, park, or child care facility. Accordingly, the only portion of Section 590 which Plaintiff would violate if he lived in the South Braden residence is the restriction relating to schools and educational institutions.

[7] Plaintiff and his wife were married on January 18, 2006, a few months after Plaintiff received notice that he was in violation of Section 590 by living at the South Braden residence. Plaintiff was accordingly aware that he was unable to live in his wife's residence at the time he married her.

[8] There was no evidence presented at the hearing before the Court or in the briefs filed by the parties, which suggested that Defendants did not intend to enforce Section 590 against Plaintiff.

[9] On August 31, 2006, Plaintiff filed a "Notice of Change in Circumstances," wherein he stated that he was "homeless and without a place to live" because he was "unable to pay the cost of renting a motel room." See Dkt. No. 27.

[10] Although Plaintiff received notice that his presence in the South Braden home was in violation of Section 590 when the previous version of Section 590, enacted in 2003, was in place, Plaintiff is challenging the current version of Section 590, as amended in June 2006. Because the specific provision of Section 590 challenged by Plaintiff—namely, the prohibition from living within a 2,000 foot radius of a school—is present in both the 2003 version and 2006 version of Section 590, the Court finds this to be an irrelevant distinction. The amended version of 2003 does nothing to alter Plaintiff's living situation; although Plaintiff was informed of the Section 590 violation in 2005, his presence at the South Braden residence violates the amended version of Section 590 in precisely the same manner as it violated the prior version of the statute.

[11] Plaintiff testified at the August 29 hearing that this is the only portion of Section 590 which he is challenging.

4

he has been financially injured, as he was forced to pay approximately $140.00 per week for his room at the Economy Inn. Finally, because Plaintiff contends he can no longer pay the cost of a motel room, he argues he is injured by the fact that he is now homeless.

Plaintiff initially brought suit against Brad Henry and the State of Oklahoma. Plaintiff later amended his Complaint on August 31, 2006 to include District Attorney Tim Harris, the Tulsa Police Department, the Tulsa County Sheriff's Office, and Drew Edmondson. *See* Pl.'s Am. Compl. Although the specific bases for Plaintiff's constitutional challenge to Section 590 are not readily apparent from the face of his Amended Complaint, Plaintiff informed the Court at the August 29 hearing that he contends Section 590 violates the Double Jeopardy Clause of the Fifth Amendment[12] and various provisions of the Fourteenth Amendment—namely, the Due Process Clause, the Privileges and Immunities Clause, and the Equal Protection Clause.[13] Plaintiff has also filed a Motion for Injunction, currently before the Court, wherein he asks the Court to "issue a temporary injunction on the States [sic] unconstitutional laws concerning residency requirements of where registered sex offenders can live." *See* Pl.'s Mot. for Injunction at p. 1.

## II.   LEGAL STANDARD FOR PRELIMINARY INJUNCTION

To obtain a preliminary injunction in federal court, the movant has the burden of establishing that: (1) there is a substantial likelihood that he will eventually prevail on the merits; (2) he will

---

[12] The Fifth Amendment's Double Jeopardy Clause is applied to the states through the Fourteenth Amendment. *See* U.S. CONST. amend. XIV; *Warnick v. Booher*, 425 F.3d 842, 947 (10th Cir. 2005) (citing *Benton v. Maryland*, 395 U.S. 784 (1969)).

[13] Plaintiff does not challenge Section 590 on the basis of overbreadth. He presents no argument that the statute casts too wide a net in terms of the class of individuals subject to the residency restrictions therein. Nor does Plaintiff argue that it is improper for him to be included in the class of individuals subject to Section 590.

5

suffer irreparable injury unless the motion is granted; (3) the injunction, if issued, would not be adverse to the public interest; and (4) the threatened injury to him outweighs whatever damage the proposed injunction may cause the opposing party. *Aid for Women v. Foulston*, 441 F.3d 1101, 1115 (10th Cir. 2006); *Kiowa Indian Tribe of Okla. v. Hoover*, 150 F.3d 1163, 1171 (10th Cir. 1998). Because a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal. *See Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005) (quotation omitted); *United States ex rel. Citizen Band Potawatomi Indian Tribe of Okla. v. Enter. Mgmt. Consultants, Inc.*, 883 F.2d 886, 888-89 (10th Cir. 1989) ("Because it constitutes drastic relief to be provided with caution, a preliminary injunction should be granted only in cases where the necessity for it is clearly established.").

The Tenth Circuit has applied a less rigorous standard for preliminary injunctions in certain circumstances. *See Autoskill, Inc. v. Nat'l Educ. Support Sys., Inc.*, 994 F.2d 1476, 1487 (10th Cir. 1993). Under this "less rigorous standard," if the moving party satisfies the first three elements, the standard for meeting the fourth requirement, likelihood of success on the merits, generally becomes more lenient; the moving party need only show that the issues are so serious, substantial, difficult, and doubtful as to make them fair ground for litigation. *See id.*

In *Heideman v. South Salt Lake City*, 348 F.3d 1182 (10th Cir. 2003), however, the Tenth Circuit held that "[w]here a preliminary injunction seeks to stay governmental action taken in the public interest pursuant to a statutory or regulatory scheme, the [less rigorous standard] should not be applied." *Id.* at 1189 (citing *Sweeney v. Bane*, 996 F.2d 1384, 1388 (2d Cir. 1993)). Because the Court finds that the preliminary injunction sought by Plaintiff "seeks to stay governmental action taken in the public interest" pursuant to a statutory scheme, the Court will not apply the less rigorous

6

standard in this case. *See Aid for Women*, 441 F.3d at 1115 n. 15 (declining to apply the less rigorous standard for a preliminary injunction when plaintiff sought to enjoin state statute based on argument that such statute was unconstitutional) (stating "we presume that all governmental action pursuant to a statutory scheme is 'taken in the public interest'").

## III.   APPLICATION OF PRELIMINARY INJUNCTION STANDARD

### A.   Likelihood of Success on Merits

To demonstrate a substantial likelihood of success on the merits, Plaintiff is required to present "a prima facie case showing a reasonable probability that [he] will ultimately be entitled to the relief sought." *Autoskill Inc.*, 994 F.2d at 1487. For the reasons discussed below, the Court finds Plaintiff has failed to make such a showing.

### 1.   Plaintiff's Double Jeopardy Argument

Plaintiff argues that "by making laws that limit the petitioners [sic] ability to live inside the city limits of Tulsa County and or within most of Oklahoma, the legislative power of the State of Oklahoma has in fact inflicted two punishments on the Petitioner [in violation of the Double Jeopardy Clause of the 5th Amendment], one being the time the Petitioner was in prison, two being the restriction of where the Petitioner is able to live since his release from prison after the completion of his sentence [sic]." *See* Pl.'s Am. Compl. at pp. 1-2.

The Double Jeopardy Clause provides that no "person [shall] be subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. The Supreme Court has long recognized that the Double Jeopardy Clause does not prohibit the imposition of all additional sanctions that could, "in common parlance," be described as punishment. *Hudson v. United States*, 522 U.S. 93, 98-99 (1997) (quoting *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 549 (1943)).

7

The Clause protects only against the imposition of multiple *criminal* punishments for the same offense. *Hudson*, 522 U.S. at 99; *Breed v. Jones*, 421 U.S. 519, 528 (1975) ("In the constitutional sense, jeopardy describes the risk that is traditionally associated with a criminal prosecution."). Accordingly, "the core inquiry" in double jeopardy analysis is whether the relevant statute is "civil or criminal in nature." *Simpson v. Bouker*, 249 F.3d 1204, 1212 (10th Cir. 2001).

The Tenth Circuit employs a "two-part test for determining whether a particular punishment is civil or criminal." *Simpson*, 249 F.3d at 1212. The Court must first determine whether the legislature intended the statute to serve remedial, nonpunitive aims. Such intention is to be determined, in the first instance, from a review of the statute itself. *See Kansas v. Hendricks*, 521 U.S. 346, 361 (1997); *Simpson*, 249 F.3d at 1212 (citing *Hudson*, 522 U.S. at 99). Second, "[e]ven in those cases where the legislature has indicated an intention to establish a civil penalty, [the Court must]. . . inquire further whether the statutory scheme was so punitive either in purpose of effect as to transform what was clearly intended as a civil remedy into a criminal penalty." *Simpson*, 249 F.3d at 1212 (citing *Hudson*, 522 U.S. at 99).

Applying the first step of the above-outlined "two-part test," the Court finds Plaintiff is unlikely to demonstrate that the Oklahoma Legislature intended Section 590 to constitute a punitive measure. "Legislative intent to enact a nonpunitive measure is ascertainable from the simple fact that the legislature placed the statute in the civil code as opposed to the criminal code." *Femedeer v. Haun*, 227 F.3d 1244, 1249 (10th Cir. 2000) (quoting district court's opinion in *Femedeer v. Haun*, 35 F. Supp. 2d 852, 856 (D. Utah 1999) with approval). In the instant case, Section 590 is notably not included in either Title 21 or Title 22, which govern "Crimes and Punishment" and "Criminal Procedure," respectively. Rather, Section 590 is codified within Title 57 of the Oklahoma

statutes, which governs "Prisons and Reformatories." *See Doe v. Miller*, 405 F.3d 700, 718-19 (8th Cir. 2005) (finding the Iowa General Assembly did not intend Iowa's sex offender statute, which prohibits sex offenders from residing within 2,000 feet of a school or child care facility, to be punitive, in part because of where statute was placed within the Iowa code).

Further, the Sex Offenders Registration Act, of which Section 590 is a part, contains a statement of purpose in OKLA. STAT. tit. 57 § 581(B):

> The Legislature finds that sex offenders who commit other predatory acts against children and persons who prey on others as a result of mental illness pose a high risk of re-offending after release from custody. The Legislature further finds that the privacy interest of persons adjudicated guilty of these crimes is less important than the state's interest in public safety. The Legislature additionally finds that a system of registration will permit law enforcement officials to identify and alert the public when necessary for protecting public safety.

This statement of purpose indicates a remedial intent, focusing on maintaining public safety. *See Femedeer*, 227 F.3d at 1249 (finding Utah's sex offender notification and registration statute to be remedial in nature, in part because of the statement of purpose included in the statute); *Lee v. State of Alabama*, 895 So.2d 1038, 1040 (Ala. Crim. App. 2004) (finding the Alabama legislature did not intend Alabama's sex offender statute, prohibiting sex offenders from living within 2,000 feet of a school or child care facility, to be punitive, in part because the legislature's focus in passing the statute was on public safety). "[W]here a legislative restriction is an incident of the State's power to protect the health and safety of its citizens, it will be considered as evidencing an intent to exercise that regulatory power, and not a purpose to add to the punishment." *Smith v. Doe*, 538 U.S. 84, 93-94 (2003) (considering ex post facto challenge to an Alaska statute requiring sex offenders to

register).[14]

"Because the Act purports to be civil on its face, a presumption arises that the statute is civil in nature." *Simpson*, 249 F.3d at 1212 (citing *Kansas*, 521 U.S. at 361 (1997)).  Plaintiff can overcome this presumption only "by the *clearest proof* that the statutory scheme is so punitive either in purpose or effect as to transform what was clearly intended as a civil remedy into a criminal penalty." *Hudson*, 522 U.S. at 99 (emphasis added); *see Simpson*, 249 F.3d at 1212 (noting a court can consider the following "useful guideposts" in evaluating whether a civil remedy is truly a criminal penalty: (1) whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as a punishment; (3) whether it comes into play only on a finding of scienter; (4) whether its operation will promote the traditional aims of punishment, retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and (7) whether it appears excessive in relation to the alternative purpose assigned) (citing *Hudson*, 522 U.S. at 99-100). Plaintiff has not made any specific arguments with respect to why prohibiting sex offenders from living within a 2,000 foot radius of a school or educational institution is "so punitive" as to transform Section 590 into a criminal penalty.  Recent case law from other circuits, however, suggests that Plaintiff will have an up-hill battle in making such a demonstration, rendering him unlikely to succeed in this argument.

---

[14]  The fact that failure to comply with Section 590 subjects a sex offender to criminal prosecution does not transform the statute from a civil scheme to a criminal punishment.  The issue is not whether violation of Section 590 could result in punishment, but whether the residency restrictions contained therein constitute "punishment."  *See Smith*, 538 U.S. at 90, 95 (finding Alaska's sex offender registration statute, which subjected offenders to criminal prosecution for failure to register, was civil in nature).

For example, in *Doe v. Miller*, 405 F.3d 700 (8th Cir. 2005), the Eighth Circuit considered whether an Iowa statute, which prohibited sex offenders from living within 2,000 feet of a school or child care facility, violated the Ex Post Facto Clause by being "so punitive in effect as to negate the legislature's intent to create a civil ... scheme." *Id.* at 718-23; *see Kansas*, 521 U.S. at 369 (applying the same analysis to a plaintiff's ex post facto and double jeopardy arguments) ("For a statute to violate either the Ex Post Facto Clause or the Double Jeopardy Clause, that statute must be deemed "punishment."). Applying many of the factors listed above in *Simpson*, 249 F.3d at 1212, the court determined that plaintiffs did not "establis[h] the 'clearest proof'" that Iowa's statute "should be considered retroactive criminal punishment." *Miller*, 405 F.3d at 723. Specifically, the court dismissed plaintiff's argument that the residency restriction was the "effective equivalent of banishment, which has been regarded historically as a punishment," reasoning that unlike "banishment," the residency restriction at issue did not "'expel' the offenders from their communities or prohibit them from accessing areas near schools or child care facilities for employment, to conduct commercial transactions, or for any purpose other than establishing a residence." *Id.* at 720. The court also found that although the residency restriction could have a deterrent effect, the main goal of the statute was in "protecting the health and safety of children." *Id.* Finally, the court determined that while the statute did impose an element of "affirmative disability or restraint," the statute had a "rational connection to a nonpunitive purpose"— a factor which the Eighth Circuit deemed "most important." *Id.* at 721; *see Weems v. Little Rock Police Department*, 453 F.3d 1010, 1017 (8th Cir. 2006) (finding that Arkansas' statute, which prohibited sex offenders from living within 2,000 feet of a school or daycare center, constituted a "non-punitive regulatory scheme"); *Lee*, 895 So.2d at 1040 (finding sex offender residency requirement of Alabama statute was non-punitive and therefore

11

did not violate Ex Post Facto Clause).  This analysis similarly applies to the residency restriction of

Section 590, making it unlikely that Plaintiff will succeed in demonstrating that Section 590 is so

punitive in effect as to negate the Oklahoma's Legislature's intent to create a civil scheme.

Accordingly, the Court finds that Plaintiff is unlikely to succeed on the merits of his double jeopardy

argument.

### 2. Plaintiff's Due Process Clause Argument

Plaintiff further argues that Section 590 violates the Due Process Clause of the Fourteenth

Amendment.  The United States Constitution guarantees that "[n]o State shall ... deprive any person

of life, liberty, or property, without due process of law."  U.S. CONST. amend. XIV, § 1.  This

provision has been interpreted to have both a procedural and substantive component when reviewing

state action.  *See Butler v. Rio Rancho Public Schools Bd. of Educ.*, 341 F.3d 1197, 1200 (10th Cir.

2003) ("The Due Process Clause not only provides a procedural safeguard against deprivations of

life, liberty and property but also protects substantive aspects of those interests from unconstitutional

restrictions by government") (internal citations omitted).  The procedural component guarantees that

a state will not deprive a person of life, liberty, or property without some form of notice and

opportunity to be heard.  *See Hamdi v. Rumsfeld*, 542 U.S. 507, 533 (2004).  Plaintiff's Amended

Complaint does not implicate procedural due process, as it makes no mention of notice or an

opportunity to be heard.  Nor did Plaintiff raise these issues in the hearing on August 29.

Accordingly, the Court will analyze Plaintiff's due process argument as one based on the substantive

component of the Due Process Clause.

The substantive component protects fundamental rights that are so implicit in the concept of

ordered liberty that neither liberty nor justice would exist if they were sacrificed.  *See Chavez v.*

12

*Martinez*, 538 U.S. 760, 775 (2003); *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997). When a state enacts legislation that infringes fundamental rights, courts will review the law under a strict scrutiny test and uphold it only when it is "narrowly tailored to serve a compelling state interest." *Reno v. Flores*, 507 U.S. 292, 302 (1993). The Supreme court has recognized that fundamental rights include those guaranteed by the Bill of Rights as well as certain "liberty" and privacy interests implicit in the Due Process Clause and the penumbra of constitutional rights. *See Paul v. Davis*, 424 U.S. 693, 712-13 (1976). These special "liberty" interests include "the right to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, and to abortion." *Washington*, 521 U.S. at 720.

A court must first analyze a substantive due process claim by crafting a "careful description of the asserted right." *Reno*, 507 U.S. at 303. The court must then determine whether the asserted right is "one of those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Williams v. Attorney Gen. of Alabama*, 378 F.3d 1232, 1239 (11th Cir. 2004). When a statute does not implicate fundamental rights, the court must apply the highly deferential rational basis standard, asking whether the law is "rationally related to legitimate government interests." *Glucksberg*, 521 U.S. at 728. Accordingly, in order to assess the likelihood that Plaintiff will succeed on the merits with regard to his substantive due process argument, the Court must determine what right(s) are allegedly being jeopardized by application of Section 590.

In the hearing before the Court on Plaintiff's Motion for Injunction, the Court made specific inquiry of Plaintiff with regard to the right(s) at issue in this case. As stated by Plaintiff, it is his

13

right to live with his wife in a home that is located within a 2,000 foot radius of a school which is being jeopardized by application of Section 590. It is unlikely Plaintiff can demonstrate that this right is "fundamental," however. While Supreme Court precedent indicates that individuals enjoy a fundamental right to personal choice in matters of family life, including the right to reside with a family unit of a person's choosing,[15] Section 590 does not impose on such right, as it does not dictate *with whom* Plaintiff may live, but only where Plaintiff may live. *Doe*, 405 F.3d at 710-11 ("Although [Iowa's sex offender statute] restricts where a residence may be located, nothing in the statute limits who may live with [plaintiffs] in their residences."). Further, courts have determined that there is no fundamental right to live where one pleases. *See Weems*, 453 F.3d at 1015 (rejecting plaintiffs' contention that there is a fundamental constitutional right to "reside in a certain place, i.e. with family members," and therefore applying rational basis review to statute).

Because Plaintiff is unlikely to demonstrate that his professed right amounts to a "fundamental right," rational basis review is applicable in the instant case, and the Court must review Section 590 to determine whether it meets the standard of "rationally advancing some legitimate governmental purpose." *Miller*, 405 F.3d at 714. Because the Oklahoma Legislature has a legitimate interest in protecting children from abuse by sex offenders, and because Section 590 rationally advances this interest, it is unlikely that Plaintiff will be able to succeed in his substantive due process argument under the rational basis standard. *See Weems*, 453 F.3d at 1015 (finding Arkansas statute, prohibiting sex offenders from living within 2,000 feet of a school or daycare center, advances legitimate interest in protecting children from sex offenders); *Doe*, 405 F.3d at 714-15 (finding that the legislature had a legitimate interest in protecting children and that Iowa's statute

---

[15] *See Moore v. City of East Cleveland*, 431 U.S. 494, 498-99 (1977).

14

rationally advanced this interest by prohibiting sex offenders from living within 2,000 feet of a school or child care facility).

### 3.    Plaintiff's Privileges and Immunities Clause Argument

Plaintiff also argues that Section 590 violates the Privileges and Immunities Clause of the Fourteenth Amendment, which provides that "[n]o State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States." U.S. CONST. amend. 14, § 1. Neither Plaintiff's Amended Complaint nor his argument at the August 29 hearing effectively illuminate the precise basis for this challenge. Construing Plaintiff's pleadings liberally, *Hall*, 935 F.3d at 1110, the Court assumes that Plaintiff's privileges and immunities challenge is based on the right to travel, as this right has often been linked with the Privileges and Immunities Clause in the context of sex offender registration, notification, and residency restriction statutes. *See, e.g., Doe*, 405 F.3d at 711-12; *Creekmore v. Attorney General of Texas et al.*, 341 F. Supp. 2d 648, 667-68 (E.D. Tex. 2004); *Lines v. Wargo et al.*, 271 F. Supp. 2d 649, 660 (W.D. Penn. 2003).

The Supreme Court has explained that the right to interstate travel "protects interstate travel against two sets of burdens: 'the erection of actual barriers to interstate movement' and 'being treated differently' from interstate travelers." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 277 (1993) (internal citations omitted). The Court finds that Plaintiff is unlikely to succeed on the merits of his privileges and immunities challenge because Plaintiff will have a difficult time demonstrating that Section 590 creates either burden listed in *Bray*. Specifically, similar to the Iowa statute at issue in *Miller*, Section 590 "imposes no obstacle to a sex offender's entry into [Oklahoma], and does not erect an 'actual barrier to interstate movement.'" *Miller*, 405 F.3d at 712 (rejecting Privileges and Immunities Clause challenge to Iowa statute, which was based on alleged

violation of the right to interstate travel).  "Nor does the [Oklahoma] statute violate principles of equality by treating nonresidents who visit [Oklahoma] any differently than current residents, or by discriminating against citizens of other States who wish to establish residence in [Oklahoma.]"  *Id.*

To the extent Plaintiff challenges Section 590 on the basis of *intrastate* travel, the Court finds Plaintiff is also unlikely to succeed on such grounds.  Section 590 does not prevent a sex offender from entering or leaving any part of Oklahoma, and does not erect any actual barrier to intrastate movement.  *See Miller*, 405 F.3d at 713 (rejecting plaintiffs' claim that Iowa's sex offender residence restriction burdened their ability to travel intrastate).  The Court therefore finds Plaintiff unlikely to succeed on the merits of his Privileges and Immunities Clause challenge.

### 4.  Plaintiff's Equal Protection Clause Argument

Plaintiff next contends that Section 590 violates the Equal Protection Clause of the Fourteenth Amendment.  The Fourteenth Amendment mandates that "[n]o State shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. CONST. amend. XIV § 1.  Under equal protection analysis, the level of scrutiny afforded a statute depends on the nature of the interest involved.  Specifically, "strict scrutiny" is appropriate where a "suspect class" or a "fundamental right" is involved.  *See Eaton v. Jarvis Products Corp.*, 965 F.2d 922, 929 (10th Cir. 1992).  Sex offenders are not a suspect class.  *Lustgarden v. Gunter*, 966 F.2d 552, 555 (10th Cir. 1992).  Nor is Plaintiff likely to demonstrate that a "fundamental right" is being violated by application of Section 590.  *See* Section III(A)(2) *supra.*  Application of rational basis review is accordingly appropriate. For the reasons described above, the Court finds Plaintiff is unlikely to demonstrate that Section 590 does not rationally advance a legitimate governmental purpose.  *See* Section III(A)(2) *supra*.  Accordingly, the Court finds Plaintiff is unlikely to succeed

16

on the merits of his equal protection claim. *See Weems*, 453 F.3d at 1016 (agreeing that rational

basis review applies to equal protection claim regarding Arkansas' sex offender statute) (finding that

Arkansas' statute was rationally related to the state's legitimate interest in protecting the safety of

children, so as to not violate the equal protection clause).

**B.**     **Irreparable Injury**

"To constitute irreparable harm, an injury must be certain, great, actual and not theoretical."

*Heideman*, 348 F.3d at 1189 (internal citations omitted). "The party seeking injunctive relief must

show that the injury complained of is of such *imminence* that there is a clear and present need for

equitable relief to prevent irreparable harm." *Id.* (internal citations omitted). A plaintiff suffers

irreparable injury when the court would be unable to grant an effective monetary remedy after a full

trial because damages would be inadequate or difficult to ascertain. *See Tri-State Generation &*

*Transmission Ass'n, Inc. v. Shoshone River Power, Inc.*, 874 F.2d 1346, 1354 (10th Cir. 1989).

Plaintiff's assertion that he was "injured" because he was forced to spend $140.00 a week

for a motel does not constitute an "irreparable" injury, as Plaintiff could easily be compensated for

such "injury" through monetary restitution. Further, the Court is not convinced that Plaintiff has

been irreparably injured due to his wife's illness. Although the Court is sympathetic to the

difficulties presented by Plaintiff's inability to care for his wife in her residence, Plaintiff's wife

could relocate so that she may reside with Plaintiff in a location that is not in violation of Section

590. Indeed, Plaintiff and his wife were aware of the residency restriction when they were married

and could have taken steps to avoid the current situation.

However, the Court finds that Plaintiff has made a sufficient showing of irreperable injury

because, according to the "Notice of Change of Circumstances" filed by Plaintiff (Dkt. No. 27), he

17

is currently homeless and living on the streets as a result of the application of Section 590.  Such harm cannot be fully remedied through retroactive payments.  *See Basham v. Freda*, 805 F. Supp. 930, 932 (M.D. Fla. 1992) (finding "Plaintiffs have demonstrated irreparable injury in that a denial of this motion could render them homeless").

### C.   Harm to the Public Interest

Because of the strong public safety concerns supporting Section 590, the public interest weighs heavily against granting Plaintiff's Motion for Injunction.  As found by the Oklahoma Legislature, and as outlined in the purpose statement of Oklahoma's Sex Offenders Registration Act, "sex offenders who commit other predatory acts against children and persons who prey on others as a result of mental illness pose a high risk of re-offending after release from custody." OKLA. STAT. tit. 57 § 581(B).  Indeed, the public has a "substantial and compelling interest in protecting children from sex offenders."  *See Doe v. Petro*, 2005 WL 1038846, *4 (S.D. Ohio 2005) (denying plaintiff's motion to temporarily restrain enforcement of Ohio's sex offender statute, which prohibited sex offenders from living within 1,000 feet of a school premises).  Granting Plaintiff's Motion for Injunction would expose children to the very harm Section 590 seeks to protect against.  Therefore, the public interest weighs heavily in favor of denying the Motion for Injunction.

### D.   Balance of Harms to Parties

This element of the preliminary injunction test requires the Court to balance the hardships to the parties that would result from issuing the proposed injunction, specifically considering whether the injury to Plaintiff from application of Section 590 outweighs the damage to Defendants in enjoining the application of the statute.  *See Aid for Women*, 441 F.3d at 1115; *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 727-28 (3d Cir. 2004).  The Court finds that this element is intertwined

with the Court's public safety concerns.  Defendants, as governmental officials and entities, have a

duty to protect the public and would be harmed by the risks posed to the public as a result of

enjoining application of Section 590.  Although Plaintiff will not escape harm from enforcement of

Section 590, the Court finds that the balance of the harms weighs in favor of denying the request for

an injunction.

## IV.    CONCLUSION

Plaintiff has failed to clearly establish the elements necessary for a preliminary injunction.

Although Plaintiff has been harmed by the application of Section 590, Plaintiff is unlikely to succeed

on the merits of his constitutional challenge.  Further, public interest strongly favors denial of

Plaintiff's motion, as does the balance of the harms between the parties.  It is THEREFORE

ORDERED that "Plaintiff's Motion for Injunction on Sex Offender Registration Requirements &

Motion to Move In To [sic] Family Owned Home" (Dkt. No. 2) is DENIED.  The Court's ruling on

this matter renders Plaintiff's "Motion for Ruling" (Dkt. No. 33) and Plaintiff's "Motion for Court

Order" (Dkt. No. 36) MOOT.

Ordered this _14th_ day of SEPTEMBER, 2006.

TERENCE KERN
UNITED STATES DISTRICT JUDGE